**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| Maria Trivino, on behalf of the US Default Group, Inc. Profit Sharing Plan, formerly known as the US Default Group, Inc. Employee Stock Ownership Plan, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>Garrett Bender, Eric Bender, Mitchell Gevinson, Teri Gevinson, Brian Weprin, GreatBanc Trust Company, and David Schneid,<br><br>Defendants. | **CLASS ACTION COMPLAINT** |

## NATURE OF THE ACTION

1. Maria Trivino ("Plaintiff"), on behalf of the US Default Group, Inc. Profit Sharing Plan, formerly known as the US Default Group, Inc. Employee Stock Ownership Plan (the "ESOP" or "Plan"), and on behalf of similarly situated Plan participants (the "Class"), asserts claims for violations of Sections 1104 and 1106 of the Employee Retirement Income Security Act ("ERISA") against GreatBanc Trust Company ("GreatBanc"), the ESOP's trustee; the five individuals who collectively served as the Plan Administrator: Garrett Bender, Eric Bender, Mitchell Gevinson, Teri Gevinson, and Brian Weprin (the "ESOP Committee Defendants"); and David Schneid, who knowingly profited from his co-Defendants' unlawful treatment of the ESOP (collectively, GreatBanc, the ESOP Committee Defendants, and Schneid are referred to herein as "Defendants"). The benefits paid to Plaintiff and the Class from the Plan were diminished by the unlawful actions of Defendants.

## PARTIES

### Plaintiff

2. Plaintiff Maria Trivino is a natural person currently residing in Boca Raton, Florida. She has worked for US Default Group, Inc. (USDG) since around March 2022. She participated in USDG's ESOP. She had shares of USDG stock and ESOP redemption proceeds allocated to her individual ESOP account when the ESOP was terminated in December 2024. In around November 2025, USDG transferred her ESOP account balance to an IRA in connection with the final liquidation of the ESOP. She would have received additional benefits from her ESOP account but for Defendants' misconduct, including Defendants' failure to provide adequate consideration for redemption of the ESOP's shares.

### Defendants

3. Defendant Garrett Bender is a natural person currently residing in Delray Beach, Florida. He served as a Plan Administrator during the relevant time. Along with the other ESOP Committee Defendants and David Schneid, he was the primary controller and owner of RAS (as defined below).

4. Defendant Eric Bender is a natural person currently residing in Boynton Beach, Florida. He served as a Plan Administrator during the relevant time. Along with the other ESOP Committee Defendants and David Schneid, he was the primary controller and owner of RAS.

5. Defendant Mitchell Gevinson is a natural person currently residing in Boca Raton, Florida. He served as a Plan Administrator during the relevant time. Along with the other ESOP Committee Defendants and David Schneid, he was the primary controller and owner of RAS.

6. Defendant Teri Gevinson is a natural person currently residing in Boca Raton, Florida. She served as a Plan Administrator during the relevant time. Along with the other ESOP Committee Defendants and David Schneid, she was the primary controller and owner of RAS.

7. Defendant Brian Weprin is a natural person currently residing in Boca Raton, Florida. He served as a Plan Administrator during the relevant time. Along with the other ESOP Committee Defendants and David Schneid, he was the primary controller and owner of RAS.

8. Defendant GreatBanc Trust Company ("GreatBanc") is an Illinois corporation headquartered in Lisle, Illinois. GreatBanc was the ESOP trustee from June 4, 2019 through the redemption of the ESOP's stock on December 31, 2024.

9. Defendant David Schneid is a natural person currently residing in Highland Beach, Florida. Along with the ESOP Committee Defendants, he was the primary controller and owner of RAS.

## JURISDICTION AND VENUE

10. Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and the terms of the Plan and obtain monetary and appropriate equitable and injunctive relief.

11. This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

12. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the ESOP was administered in this district.

## ADMINISTRATIVE EXHAUSTION

13. The ESOP's Summary Plan Description instructs Plan participants that the ESOP Committee Defendants will review and issue a decision on all claims related to the Plan. The ESOP's Summary Plan Description designates USDG as the agent to receive service of claims related to the Plan and directs that service should be made at USDG's headquarters in Boca Raton. The ESOP's Summary Plan Description also states that the ESOP Committee Defendants should be contacted "c/o USDG" at USDG's headquarters in Boca Raton.

14. On April 7, 2026, Plaintiff delivered an administrative complaint to USDG at USDG's headquarters in Boca Raton. Plaintiff's administrative complaint sought recovery of additional benefits on behalf of the ESOP and its participants and demanded that the ESOP Committee Defendants investigate and issue a decision on her claims. FedEx records confirm that Plaintiff's administrative complaint was delivered to USDG's designated address at 10:02 a.m. on April 7, 2026.

15. The ESOP Committee Defendants were required to make a claim determination by July 6, 2026: ninety days after delivery of the administrative complaint. 29 C.F.R. § 2560.503-1(f). To date, the ESOP Committee Defendants have neither made a benefit determination nor requested an extension of their deadline to respond. Plaintiff has therefore exhausted administrative remedies. *Id.* § 2560.503-1(l); *Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1307 (M.D. Fla. 2009) (explaining that "the failure of an administrator to complete the final disposition of a claim in a timely manner results in a 'deemed exhaustion' of the claimant's administrative remedies"); *McDowell v. Standard Ins. Co.*, 555 F. Supp. 2d 1361, 1372–73 (N.D. Ga. 2008) ("It is fair to say that plaintiff had no realistic way of knowing when he would actually

receive a final decision from Standard. Thus, it was appropriate for plaintiff to file suit in reliance on the 'deemed exhausted' regulation." (citation omitted)).

**DEFENDANTS' ABUSE OF THE ESOP**

***USDG and the RAS Enterprise***

16. USDG was established by conversion from a limited liability company of the same name in 2015.

17. USDG is part of a business empire built by its owners that operates under the common name "RAS". RAS provides collection services to lenders, banks, and loan servicers.

18. RAS is made up of dozens of legal entities under common control. RAS routinely creates new legal entities and inactivates others as part of its single enterprise. USDG and affiliated entities operating as RAS have no corporate branding, goodwill, or relationships independent of RAS. The purpose of USDG and affiliated companies is to serve RAS and its control group. All uses of the term "RAS" throughout the Complaint refer collectively to the RAS enterprise, including the dozens of legal entities that operate under the RAS brand name.

19. RAS is primarily controlled and owned, directly or indirectly, by the six individual Defendants: David Schneid, Garrett Bender, Eric Bender, Mitchell Gevinson, Teri Gevinson, and Brian Weprin.

***Creation and Operation of the Plan***

20. USDG converted to a stock corporation in 2015 in order to allow RAS's owners to sell 30% of their shares to the newly-created ESOP.

21. USDG's owners sold the 30% stake to the Plan for $50,500,000, which the Plan satisfied by issuing promissory notes to the owners. The sale closed December 23, 2015. The Plan held its shares through an ESOP Trust for the ostensible benefit of USDG employees.

22. The valuation of the non-controlling 30% interest in USDG at $50,500,000 implied a valuation of the entirety of USDG of around $200 million. To achieve that lofty valuation, substantially all of RAS's business activities were projected as income to USDG, with the assumption that substantially all of RAS's business operations would run through USDG going forward.

23. The sale of 30% of USDG to the ESOP generated substantial benefits to RAS's owners. They avoided taxes on sale proceeds due to favorable tax code provisions for ESOP sales. They controlled the sale process, valuation assumptions, and the selection of the Plan's outside trustee, which allowed them to control and ultimately maximize the sale price. They also retained control of USDG after the sale. The deal allowed them to draw $50,500,000 out of RAS and reduce or potentially eliminate taxes on it, depending on how the proceeds are used. Additionally, future years' contributions are all tax-deductible, providing an additional tax benefit to the non-ESOP owners.

24. At the time of the initial sale in 2015, all of the ESOP's shares were transferred to a suspense account within the ESOP Trust. As USDG made tax-deductible contributions to Plan participant accounts each year, the Plan turned around and immediately used those contributions to make loan payments back to USDG, which assumed the promissory notes owed to RAS's owners. As principal payments were made on the outstanding notes, shares in like proportion were released to individual participant accounts in the ESOP from the ESOP suspense account. Thus when the notes were fully repaid in 2024, the sellers had received $50,500,000 in tax deferred proceeds (plus interest); the ESOP participants had received $50,500,000 in contributions to their ESOP accounts; and individual ESOP participants were allocated all of the USDG stock that the ESOP acquired for $50,500,000.

25. Participant accounts were treated as retirement accounts under federal benefits and tax laws. Participants could not withdraw their accounts from the Plan without a qualifying event such as retirement, disability, death, or termination of their employment or the Plan. Participants cannot use their account value prior to reaching retirement age without paying a penalty tax.

***Parties Possessing and Exercising Discretion and Control over the Plan***

26. GreatBanc became the trustee of the Plan on June 4, 2019, succeeding the Plan's former trustee, Wilmington Trust. In this role it was a named fiduciary of the ESOP. 29 U.S.C. § 1102(a)(2).

27. As trustee, GreatBanc acted as custodian of the Plan's assets. It was responsible for commissioning annual appraisals of the ESOP's USDG stock based on data and information provided by the ESOP Committee Defendants. GreatBanc was then responsible for reviewing those valuations and deciding whether to approve them. GreatBanc was also responsible for monitoring the ESOP's investment. Because the ESOP's sole asset was USDG stock, GreatBanc was responsible for monitoring the financial condition of USDG, both to protect the asset as needed and to ensure that investing in USDG stock remained a prudent investment for Plan participants. GreatBanc was therefore responsible for monitoring the company on an ongoing basis and taking steps necessary to prudently manage the Plan's investment, including initiating investigations and litigation if necessary. GreatBanc also approved the sale of the ESOP's assets back to USDG, including the sale price, when the Plan was terminated in December 2024.

28. The ESOP Committee Defendants were named fiduciaries of the ESOP, designated by USDG pursuant to the procedures of the Plan to act collectively as the Plan Administrator. 29 U.S.C. § 1102(a)(2). The ESOP Committee Defendants had the authority to remove and replace the trustee. The ESOP Committee Defendants had a resulting duty to monitor

the trustee to ensure it performed its duties in a prudent and loyal manner. The ESOP Committee Defendants were also responsible for interpreting the Plan, administering claims for benefits, and determining eligibility and participation.

29. The ESOP Committee Defendants served a number of other discretionary functions relating to operation and management of the Plan. They were responsible for preparing all data and information that the trustee relied upon in performing annual valuations. Similarly, they provided all financial information to the trustee for purposes of valuing the company in 2024, when the ESOP was terminated and all the Plan's shares were sold back to USDG. The ESOP Committee Defendants also controlled the structure of that deal, including proposing USDG as the buyer. The ESOP Committee Defendants were responsible for looking for market buyers for the ESOP's shares but did not in fact conduct such a search. As named fiduciaries, the ESOP Committee Defendants were also responsible pursuant to the 2024 termination valuation for reporting to the trustee any corporate wrongdoing of which they were aware so that the value of shareholder claims possessed by the ESOP could be fairly considered.

30. Given their ability to remove the trustee, their control over the valuation information provided to the trustee, and their control of the sale process once USDG decided to terminate the Plan, the ESOP Committee Defendants orchestrated the transaction in which the ESOP's assets were sold and ultimately determined the price at which the transaction took place.

31. Each of the ESOP Committee Defendants held corporate leadership positions in multiple entities within the RAS enterprise. In practice, this meant each of the ESOP Committee Defendants was involved in making key business decisions for RAS and had both knowledge and decision-making authority on matters related to RAS's corporate strategy, strategic planning, and key organizational decisions.

32. David Schneid held significant ownership stakes in RAS and exercised control over RAS's management and operations alongside the ESOP Committee Defendants. Schneid held officer and director positions in numerous legal entities within RAS. Schneid directly and knowingly profited from the scheme to erode value of the Plan as described herein.

***Scheme to Erode Value of the Plan***

33. The ESOP Committee Defendants did not manage USDG with prudence and loyalty to the ESOP as USDG's minority shareholder.

34. Instead, over the past six years, the ESOP Committee Defendants and Schneid have eroded the value of the ESOP's USDG stock by choosing to route business activities away from USDG and instead to other RAS entities whose income did not accrue to USDG.

35. During this time, the ESOP Committee Defendants directed just enough business activities through USDG to allow USDG to make contributions to the ESOP and repay the $50,500,000 in promissory notes, allowing full realization of the tax avoidance strategy deployed in 2015.

36. Beyond satisfying the promissory notes to facilitate the attendant tax avoidance strategy, it was not in the ESOP Committee Defendants' individual interests to direct RAS business activities through USDG. So they did not. As the promissory notes were paid down, the ESOP Committee Defendants directed less income to USDG, and the stated valuation of the ESOP's USDG shares fell accordingly. At the same time, the ESOP Committee Defendants established new legal entities within RAS through which to realize revenue—entities that Plan participants supported in their work but did not own.

37. Value within RAS thus shifted away from the assumption that supported the 2015 pricing of the Plan's shares—that substantially all business activity would be conducted through

USDG and employees would own 30%—to a new scheme in which greater RAS business activity would be conducted through other RAS entities free of employee ownership.

***Termination of the Plan and the Sale of the Plan's Shares***

38. USDG resolved to terminate the Plan in December 2024 in conjunction with full satisfaction of the 2015 promissory notes.

39. To liquidate the Plan, the ESOP Committee Defendants did not look for a buyer for the Plan's stake. Neither did the Plan's trustee. The ESOP Committee Defendants simply caused USDG to redeem the Plan's shares at a price they could establish on their own. The redemption of the Plan's shares closed concurrent with the termination of the Plan on December 31, 2024.

40. The ESOP Committee Defendants schemed to redeem the ESOP's shares for lowest price that they believed they could convince the ESOP trustee to not oppose. No longer needing to allocate revenue to USDG to pay back the promissory notes, and having spent years diverting business opportunities to other RAS entities served by Plan participants but free of their ownership, the ESOP Committee Defendants reported to the ESOP's trustee that USDG's financial prospects were bleak.

41. In reliance on those reports, the trustee approved a price of just $4,350,000 for the redemption of the Plan's 30% stake in USDG. As a result, the $50,500,000 of retirement contributions made to employees' ESOP accounts between 2015 through 2024 lost 91% of their value.

42. The ESOP received no other consideration and was formally liquidated in 2025 when the $4,350,000 sale price, less expenses, was transferred to other retirement accounts on behalf of Plan participants or distributed to participants directly.

43. The financial prospects of RAS and the business activities supported by Plan participants were not bleak. The outlook only looked bleak for USDG because the ESOP Committee Defendants and Schneid had spent years diverting assets, business opportunities, and contracts from USDG to other RAS entities that did the same work using the same employees as USDG but whose profits did not accrue to USDG. USDG's supposedly bleak prospects were also impaired because USDG was not compensated at arm's length by RAS affiliates for the use of USDG's employees and other business resources.

44. For the ESOP Committee Defendants and Schneid, eliminating the ESOP's ownership stake for $4,350,000 was a windfall. The value of their ownership interests in other RAS entities was enlarged without paying fair value for all that they took from USDG.

45. At the time of the Plan's termination, the fair value of the Plan's assets included the present value of future cash flows that should have been allocated to USDG and the value of legal claims that the Plan held arising from the business usurpation, corporate waste, and other violations committed against USDG by the ESOP Committee Defendants and Schneid. The ESOP Committee Defendants and Schneid resolved to pay, and GreatBanc accepted, substantially less than the fair market value of the Plan's assets.

***ESOP Trustee Fiduciary Breaches***

46. GreatBanc had a duty to prudently monitor the Plan's investment and take actions as necessary to protect and promote its value. GreatBanc failed to monitor the company's business operations to determine whether USDG business was being improperly diverted to other RAS entities. GreatBanc also failed to investigate the potential causes of the Plan's precipitous drop in value. USDG's declining financials, the ESOP Committee Defendants' roles and ownership in numerous other RAS entities, and the steep drop in USDG's stock price all provided

sufficient notice to the trustee that investigation was warranted. That investigation was all the more necessary when GreatBanc learned the ESOP would be terminated at a proposed price that would subject the Plan to a 91% loss of value. But GreatBanc still failed to act.

47. Had GreatBanc prudently performed its fiduciary duties, it would have demanded that the ESOP Committee Defendants restate USDG's financial projections with adjustments to fairly compensate USDG for services performed for the benefit of other RAS entities. Proper projections restated based on arms-length dealings were necessary to accurately measure the value of the Plan's shares.

48. Had it acted prudently, GreatBanc also would have taken remedial action by demanding that USDG file a lawsuit against the ESOP Committee Defendants and Schneid for usurpation of business opportunities and breach of corporate fiduciary duties under the Florida Business Corporation Act; filing a derivative lawsuit on behalf of USDG under the Florida Business Corporation Act if USDG failed to act in response to GreatBanc's demand; or filing a lawsuit on behalf of the Plan for ERISA violations by the ESOP Committee Defendants arising from their failure to provide complete and accurate information concerning the value USDG shares and failure to promptly report their misconduct. GreatBanc held meritorious claims on behalf of the Plan under each theory and would have prevailed.

49. Alternatively, GreatBanc would have leveraged the same claims in negotiating the liquidation price paid to the Plan for distribution to participants.

50. Remedying the ESOP Committee Defendants' misconduct through litigation—or the earnest threat of litigation—would have yielded significant additional compensation for the Plan and its participants. Accurately valuing the Plan's shares based on arms-length dealings with

RAS affiliates also would have yielded significant additional compensation for the Plan and its participants.

***ESOP Committee Defendants' Fiduciary Breaches***

51. As described above, over at least the last six years, while acting in their corporate capacities as officers and directors of USDG and other entities within the RAS enterprise, the ESOP Committee Defendants have engaged in numerous acts designed to usurp employees, resources, revenues, and business opportunities from USDG in favor of other entities within the RAS enterprise whose revenue does not ultimately flow through USDG. They did so without fair compensation to USDG. These acts violated their fiduciary duties to USDG under corporate law and were material to, and could have been remedied by, the Plan trustee acting on behalf of the ESOP as USDG's minority shareholder.

52. As named and functional fiduciaries of the ESOP, the ESOP Committee Defendants had an ERISA fiduciary duty to report to the trustee any information they had about wrongdoing that could materially impair the value of the Plan's assets, even if they learned that information while acting in a corporate capacity. This duty to report wrongdoing exists even if it requires the fiduciary to self-report their own wrongdoing that they engaged in while acting in a corporate capacity. Failure to report such information is a breach of ERISA's duty of prudence. Failure to report is also a breach of ERISA's duty of loyalty if a named fiduciary conceals misconduct to benefit themselves or third parties.

53. The ESOP Committee Defendants each possessed material information regarding corporate activity that all five of them had engaged in with respect to USDG that impaired the value of the ESOP's shares. They each therefore had a duty to report that information to ensure that corrective action could be taken to recover any losses and prevent future wrongdoing.

However, none of the ESOP Committee Defendants reported that information to GreatBanc. Further, none of the ESOP Committee Defendants used their authority to replace GreatBanc or threaten its replacement in order to compel the trustee to take action to protect the ESOP. The ESOP Committee Defendants concealed their misconduct in an attempt to protect themselves.

54. The ESOP Committee Defendants also had a duty to monitor the trustee and ensure it was acting prudently. Because GreatBanc was not acting prudently by failing to investigate the Plan's mounting losses during the last six years or demand appropriate revisions to USDG's financial projections, the ESOP Committee Defendants had a duty to attempt to elicit prudent action from GreatBanc, or failing that, to replace GreatBanc with a trustee that would act prudently. The ESOP Committee Defendants failed to prudently monitor GreatBanc and failed to intervene when it was apparent GreatBanc would not protect the ESOP against corporate malfeasance. Again, the ESOP Committee Defendants' motivation was self-serving.

**<u>PLAINTIFF'S LACK OF ACTUAL KNOWLEDGE</u>**

55. During her participation in the Plan, Plaintiff was not responsible for the Plan's investment, valuation, legal, or corporate-governance functions. She did not have access to USDG's internal financial records, to the financial information and projections that the ESOP Committee Defendants furnished to the trustee, to the trustee's valuation files, or to the inter-company arrangements among the entities of the RAS enterprise. She trusted the Plan's fiduciaries to value, manage, and dispose of the Plan's investment in USDG stock consistent with their legal obligations, and learned that did not happen only shortly before the administrative complaint was served.

## PLAN-WIDE RELIEF

56. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks recovery on behalf of the Plan pursuant to this statutory provision.

57. Plaintiff seeks recovery for injuries to the Plan sustained as a result of prohibited transactions and fiduciary breaches during the statutory period and seeks equitable relief on behalf of the Plan as a whole.

58. Plaintiff is adequate to bring this derivative action on behalf of the Plan, and her interests are aligned with the Plan's participants and beneficiaries. Plaintiff does not have any conflicts of interest with any participants or beneficiaries that would impair or impede her ability to pursue this action. Plaintiff has retained counsel experienced in ERISA litigation, and intends to pursue this action vigorously on behalf of the Plan.

## CLASS ACTION ALLEGATIONS

59. Plaintiff additionally and alternatively seeks certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

60. Plaintiff asserts her claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All participants and beneficiaries of the US Default Group, Inc. Profit Sharing Plan, formerly known as the US Default Group, Inc. Employee Stock Ownership Plan, at the time it terminated who received a benefit from the Plan following its termination, excluding Defendants.

61. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. The Class includes around 800 individual participants.

62. <u>Typicality</u>: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff was a Plan participant and suffered injuries as a result of Defendants'

violations of ERISA. Defendants treated Plaintiff consistently with other Class members with regard to the Plan. Defendants' improper actions affected all Plan participants similarly.

63. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that she seeks to represent, and she has retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede her ability to represent such Class members.

64. Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

(a) Whether the ESOP Committee Defendants and GreatBanc were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A), and the nature and scope of each of their fiduciary duties;

(b) Whether USDG's redemption of the Plan's shares was a transaction between the Plan and a party in interest prohibited by 29 U.S.C. § 1106(a)(1)(A) and (D);

(c) Whether the Plan received adequate consideration for its assets such that the exemption in 29 U.S.C. § 1108(e) applies, and, if not, the fair market value of the Plan's assets at the time of the redemption;

(d) Whether the ESOP Committee Defendants engaged in self-dealing or conflicted transactions prohibited by 29 U.S.C. § 1106(b)(1)–(3);

(e) Whether the ESOP Committee Defendants and GreatBanc failed to comply with ERISA's fiduciary standards of prudence and loyalty under 29 U.S.C. § 1104(a)(1), including by failing to monitor the Plan's investment in USDG stock, failing to

investigate the decline in the value of that stock, failing to make proper disclosures, failing to pursue legal claims for the benefit of Plan participants, and failing to prudently investigate and negotiate the redemption of the Plan's shares;

(f) Whether the ESOP Committee Defendants breached their fiduciary duties by furnishing incomplete or misleading valuation information to the trustee and by failing to report corporate wrongdoing that materially impaired the value of the Plan's assets;

(g) Whether the diversion of business opportunities, revenue, and resources from USDG to other entities within the RAS enterprise eroded the value of the Plan's investment in USDG stock;

(h) Whether the value of the Plan's legal claims should have been reflected in the consideration paid to the Plan;

(i) Whether the ESOP Committee Defendants are jointly liable for GreatBanc's violations of ERISA under 29 U.S.C. § 1105(a)(1)–(3);

(j) Whether Schneid, and the ESOP Committee Defendants in the alternative, knowingly profited from the violations of ERISA alleged herein and are therefore liable to disgorge those profits under 29 U.S.C. § 1132(a)(3);

(k) The proper form of equitable and injunctive relief, including constructive trust, surcharge, equitable lien, rescission, reformation, and appointment of an independent fiduciary; and

(l) The proper measure of monetary relief owed to the Plan.

65. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying

adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

66. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

67. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

68. Plaintiff and her undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## CAUSES OF ACTION

### COUNT I
**Violation of 29 U.S.C. § 1106(a)(1) – Prohibited Transaction**
**Against GreatBanc**
**Joint Liability of ESOP Committee Defendants, 29 U.S.C. § 1105(a)(1)–(3)**

69. GreatBanc had discretion with respect to whether to sell and transfer the Plan's shares to USDG in connection with the liquidation of the Plan and had authority to negotiate the consideration received by the Plan. In exercise of that discretion and authority, GreatBanc agreed to accept $4,350,000 for the transfer of the Plan's shares back to USDG. Alternatively, GreatBanc was directed to sell and transfer the Plan's shares to USDG for $4,350,000 and complied with that direction. In either case, GreatBanc acted as a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) in connection with the sale and transfer of the Plan's shares to USDG for $4,350,000 because GreatBanc "exercise[d] any authority or control respecting management or disposition of [a plan's] assets."

70. USDG was a "party in interest" to the Plan as defined by 29 U.S.C. § 1002(14)(C) because it was, at all relevant times, the employer of the Plan's participants.

71. GreatBanc's transfer of the Plan's shares to USDG violated ERISA, 29 U.S.C. § 1106(a)(1)(A) & (D), because GreatBanc sold and transferred Plan assets to a party in interest to the Plan.

72. The liability exemption described in ERISA at 29 U.S.C. § 1108(e) does not apply to GreatBanc's sale and transfer of the Plan's shares to USDG because the Plan did not receive adequate consideration in the sale. *First*, the financial projections on which the valuation of the Plan's shares was based improperly assumed that USDG would continue to provide services for the benefit of RAS affiliates for less than fair compensation. Under commonly accepted fair valuation standards, appropriate adjustments needed to be made to normalize USDG's projected

earnings as though the related party arrangements with RAS affiliates were transacted at arms-length. *Second*, GreatBanc failed to include the value of derivative claims held by the Plan on behalf of the company as a minority shareholder (among other legal claims) in its valuation of the Plan's shares, further resulting in the Plan receiving less than fair market value for its interest in USDG.

73. GreatBanc is liable to the Plan pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) for the difference between $4,350,000 and the adequate consideration that would have been paid if the sale process had been free of the above defects.

74. The ESOP Committee Defendants are jointly liable with GreatBanc for its violation of 29 U.S.C. § 1106(a)(1)(A) & (D) pursuant to ERISA's co-fiduciary liability provision, 29 U.S.C. § 1105(a)(1)–(3). The ESOP Committee Defendants acted as fiduciaries of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) with respect to the sale and transfer of the Plan's shares to USDG because they exercised "any authority or control" with respect to the sale. The ESOP Committee Defendants were also named fiduciaries of the Plan pursuant to 29 U.S.C. § 1102(a)(2).

75. The ESOP Committee Defendants provided self-serving and misleading financial projections to GreatBanc that formed the sole basis upon which the deficient sale price was determined. They chose not to disclose derivative claims that the Plan held against USDG's officers and directors, which further suppressed the sale price. The ESOP Committee Defendants knew that their misleading projections and omissions reduced the sale price to below the fair market value of the interest sold. The ESOP Committee Defendants had the practical ability to stop the unfair transaction from taking place by removing the trustee or proposing a fair transaction that properly accounted for the Plan's legal claims and restated ongoing related party dealings to arms-length. However, the ESOP Committee Defendants did not take any of these actions. By these actions and omissions, the ESOP Committee Defendants enabled or failed to remedy GreatBanc's violation of

29 U.S.C. § 1106(a)(1)(A) & (D) in connection with the sale and transfer of the Plan's shares to USDG. Accordingly, ESOP Committee Defendants are jointly liable along with GreatBanc pursuant to 29 U.S.C. § 1105(a)(1)–(3).

**COUNT II**
**Violation of 29 U.S.C. § 1104(a)(1) – Breach of Fiduciary Duty**
**Against GreatBanc**
**Joint Liability of ESOP Committee Defendants, 29 U.S.C. § 1105(a)(1)–(3)**

76. Throughout its tenure as trustee, GreatBanc served as a fiduciary of the Plan as defined by 29 U.S.C. § 1002(21)(A)(i) because it "exercise[d] any authority or control respecting management or disposition of [a plan's] assets."

77. As trustee, GreatBanc owed the Plan fiduciary duties under 29 U.S.C. § 1104(a)(1), including the duty to act prudently in monitoring the Plan's investment in USDG stock. Upon assuming the role of trustee, GreatBanc was obligated to review the history and purpose of the Plan's investment in USDG, to monitor the Plan's investment position on an ongoing basis, and to enforce the Plan's shareholder rights as necessary to protect that investment.

78. GreatBanc's conduct fell far short of this standard. Financial auditor reports prepared on behalf of the Plan disclosed to GreatBanc that USDG was being managed as a captive of the RAS empire, to wit:

> [T]he Plan Sponsor is heavily dependent on revenues from one entity, which shares common ownership with the Plan Sponsor. A change in revenue from that entity could have a significant impact on the fair value of the shares held by the Plan.

79. Meanwhile, the ESOP Committee Defendants provided GreatBanc increasingly bleak financial projections for the Plan's annual valuations of its USDG stock, and the recognized value of the Plan's USDG stock dropped accordingly. The valuation of the Plan's stock when GreatBanc assumed the role of the trustee in June 2019 was $25.4 million, but by year-end 2023 it had fallen 83% to just $4.3 million after posting year-end valuations of $17 million, $11 million,

$7.6 million, and $8.2 million between 2019 and 2022. This substantial loss of recognized value occurred notwithstanding accelerated payments on the acquisition notes that reduced USDG's liabilities.

80. Given that the value of the Plan's investment was dependent on conflicted persons, a prudent trustee would not have rubber-stamped mounting losses based on declining earnings projections overseen by those conflicted persons. Under these circumstances, a prudent trustee would have taken action to investigate and protect the Plan's investment in USDG stock by, among other things:

- Reviewing representations made by the RAS control group to the Plan trustee concerning USDG's business in connection with the Plan's initial investment in USDG stock;
- Requiring USDG's directors and officers to explain the causes of USDG's declining financial results and projections;
- Confronting USDG's directors and officers with inconsistencies between how the company was operating and the representations made to the Plan when it made its initial investment;
- Demanding that USDG's officers and directors identify business opportunities and present a business plan to reverse the company's supposed decline, including plans for reducing USDG's dependence on the RAS empire;
- Obtaining corporate records of USDG pursuant to Fla. Stat. §§ 607.1602(2)–(3) and 607.1604 sufficient to identify all business arrangements and transactions involving related parties and all new business opportunities available to USDG since the Plan's initial investment;

- Scrutinizing the fairness of all related party arrangements and transactions identified by USDG's corporate records;
- Refusing to approve or ratify unfair related party arrangements involving USDG directors pursuant to Fla. Stat. § 607.0832, and taking action to void the same;
- Demanding disclosures of all outside business interests held by USDG's officers and directors and identification of all outside business dealings in the same industry as USDG since the effective date of the Plan, and independently investigating the same through public sources;
- Forcing special shareholder meetings pursuant to Fla. Stat. §§ 607.0702 and 607.0703 to demand the removal of conflicted USDG directors and appointment of independent directors;
- Presenting to USDG's board pursuant to Fla. Stat. § 607.0742 claims for USDG to bring against its conflicted officers and directors to remedy their violations of Fla. Stat. §§ 607.0830 and 607.08411, including without limitation claims for usurpation of corporate opportunities; and
- Filing derivative claims on behalf of USDG in court if the board failed to direct USDG to assert its claims directly.

81. Instead, GreatBanc chose to rubber stamp declining valuations rather than engage in any of these corrective actions.

82. GreatBanc also failed to prudently investigate and negotiate the Plan's sale of its shares to USDG, in violation of its fiduciary duties under 29 U.S.C. § 1104(a)(1). Pursuant to Fla. Stat. § 607.0741, the sale of the Plan's shares had the effect of cutting off the Plan's corporate and derivative claims against USDG's officers and directors. Since GreatBanc knew that USDG was

captive to conflicted persons and reporting a 91% loss of value, the prospective sale and loss of standing to pursue derivative claims had grave consequences. No exigency demanded the immediate sale of the Plan's shares. There was no eager third-party buyer that might walk away from a deal. Under these circumstances, a prudent fiduciary of the Plan would have undertaken the investigation outlined in Paragraph 80, *supra*, and leveraged the Plan's potential claims and the need for proper earnings adjustments to obtain a higher price in the sale, or declined to sell while pursuing the claims. GreatBanc chose not to protect the Plan, going through the motions of negotiating without meaningfully advocating for the Plan.

83. GreatBanc is liable to the Plan pursuant to 29 U.S.C. § 1109(a) and 1132(a)(2) for the difference between benefits paid to the Plan and the benefits that would have been paid had GreatBanc prudently managed, monitored, and protected the Plan's investment in USDG stock, in addition to the relief detailed in the Prayer for Relief.

84. The ESOP Committee Defendants are jointly liable with GreatBanc for its violation of 29 U.S.C. § 1104(a)(1) pursuant to ERISA's co-fiduciary liability provision, 29 U.S.C. § 1105(a)(1)–(3). The ESOP Committee Defendants are officers and/or directors of USDG. The ESOP Committee Defendants acted as fiduciaries of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii) throughout the life of the Plan because they were responsible for overseeing Plan valuation procedures, including by ensuring that the Plan trustee received complete and accurate information on which to value the Plan's share annually and in connection with USDG's proposed redemption of the Plan's shares. The ESOP Committee Defendants were also named fiduciaries of the Plan pursuant to 29 U.S.C. § 1102(a)(2).

85. The ESOP Committee Defendants consistently provided improper and misleading financial projections to the Plan trustee and failed to disclose derivative claims that the Plan

possessed against USDG's officers and directors, knowing that their actions and omissions caused the Plan's shares to be undervalued. By these actions and omissions, ESOP Committee Defendants enabled or failed to remedy GreatBanc's violations of 29 U.S.C. § 1104(a)(1) in connection with its deficient monitoring of the Plan's investment in USDG stock. Accordingly, the ESOP Committee Defendants are jointly liable along with GreatBanc pursuant to 29 U.S.C. § 1105(a)(1)–(3).

**COUNT III**
**Violations of 29 U.S.C. § 1106(b) – Prohibited Transactions**
**Against ESOP Committee Defendants**
**Joint Liability of GreatBanc, 29 U.S.C. § 1105(a)(1)–(3)**

86. In connection with USDG's redemption of the Plan's shares, the ESOP Committee Defendants acted as fiduciaries of the Plan. They exercised control over the disposition of the Plan's assets by determining the valuation on which the redemption price was based, controlling the structure of the transaction, and directing the trustee that approved it. The ESOP Committee Defendants were also named fiduciaries of the Plan at the time of the redemption transaction.

87. The ESOP Committee Defendants dealt with Plan assets in their own interest, in violation of 29 U.S.C. § 1106(b)(1). By causing the Plan's USDG shares to be redeemed at an unfair price that they controlled and suppressed, they avoided compensating the Plan for all that they took from USDG through other RAS entities, unduly enlarging the value of their other interests.

88. The ESOP Committee Defendants also acted on behalf of an adverse party in a transaction with the ESOP in violation of 29 U.S.C. § 1106(b)(2). Directing the actions of USDG as the buyer of the ESOP's shares, the ESOP Committee Defendants represented the interests of USDG in paying as little as possible for the Plan's shares. Because the ESOP Committee Defendants were named fiduciaries of the ESOP at the time, they were prohibited from acting on

behalf of USDG in this transaction unless the ESOP received adequate consideration. For the reasons described in Paragraph 72, *supra*, the ESOP did not receive adequate consideration.

89. The ESOP Committee Defendants are liable to the Plan pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) for the difference between $4,350,000 and the adequate consideration that would have been paid if the sale process had been free of defects, for disgorgement of their profits realized from the transaction, and the additional relief detailed in the Prayer for Relief.

90. GreatBanc is jointly liable with the ESOP Committee Defendants for their violations of 29 U.S.C. § 1106(b) pursuant to ERISA's co-fiduciary liability provision, 29 U.S.C. § 1105(a)(1)–(3). GreatBanc was a fiduciary of the Plan as alleged above. By its own failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of its responsibilities as trustee—including its failure to investigate the causes of USDG's reported decline, to test the assumptions underlying the projections the ESOP Committee Defendants furnished, and to assess the claims the Plan's shares carried—GreatBanc enabled the ESOP Committee Defendants to cause the Plan to engage in the redemption of its shares for less than adequate consideration in violation of 29 U.S.C. § 1105(a)(2). Alternatively, GreatBanc knew of the ESOP Committee Defendants' breaches, including from the audit disclosures and the valuation history described above, and failed to make reasonable efforts under the circumstances to remedy them as required by 29 U.S.C. § 1105(a)(3). Accordingly, GreatBanc is jointly liable along with the ESOP Committee Defendants pursuant to 29 U.S.C. § 1105(a)(1)–(3).

**COUNT IV**
**Violation of 29 U.S.C. § 1104(a)(1) – Breach of Fiduciary Duty**
**Against ESOP Committee Defendants**
**Joint Liability of GreatBanc, 29 U.S.C. § 1105(a)(1)–(3)**

91. The ESOP Committee Defendants acted as fiduciaries of the Plan throughout the life of the Plan and breached their fiduciary duties by providing inaccurate and incomplete valuation

information to the Plan's trustee, which caused the distributions paid to Plan participants to be reduced. The ESOP Committee Defendants were also named fiduciaries of the ESOP throughout the relevant time.

92. The ESOP Committee Defendants were in possession of material information related to corporate wrongdoing that threatened to materially impair the value of the ESOP's shares yet failed to report that wrongdoing to the trustee, the person in position to act upon the information. They further failed to compel action by the trustee to act upon this information, which they could have done given their ability to replace the trustee. This failure included a failure to self-report wrongdoing by themselves.

93. ESOP Committee Defendants benefited from their failure to provide complete and accurate disclosures to the Plan trustee through enlargement of the value of their interests in RAS entities without having to account to the Plan for the value that participants lost due to all that was taken from USDG and diverted to other RAS entities.

94. ESOP Committee Defendants are liable to the Plan pursuant to 29 U.S.C. § 1109(a) and 1132(a)(2) for the difference between benefits paid to Plan participants and the benefits that would have been paid had ESOP Committee Defendants provided complete and accurate information pertinent to the value of the Plan's shares, for disgorgement of their profits realized from their malfeasance, and additional relief detailed in the Prayer for Relief.

95. GreatBanc is jointly liable with the ESOP Committee Defendants for their violations of 29 U.S.C. § 1104(a)(1) pursuant to 29 U.S.C. § 1105(a)(1)–(3). By its own failure to monitor the Plan's investment in USDG stock and to investigate the causes of the reported decline in its value, GreatBanc enabled the ESOP Committee Defendants' failure to disclose material information bearing on the value of the Plan's assets to persist throughout GreatBanc's tenure as

trustee. 29 U.S.C. § 1105(a)(2). Had GreatBanc undertaken the investigation that a prudent trustee would have undertaken, the information the ESOP Committee Defendants withheld would have been disclosed and the Plan's losses could have been avoided.

**COUNT V**
**Knowing Participation in Prohibited Transactions and Breaches of Fiduciary Duties Pursuant to 29 U.S.C. § 1132(a)(3)**
**Against Schneid**

96. Pursuant to 29 U.S.C. § 1132(a)(3), a plan participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" Such "appropriate equitable relief" includes recovering proceeds of a fiduciary violation from a knowing participant in the violation. *See Harris Trust v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000).

97. Schneid was at all relevant times a "party in interest" with respect to the Plan as defined by 29 U.S.C. § 1002(14)(H) because he was an officer, a director, or a person having powers or responsibilities similar to those of an officer or director of USDG. He was also a party in interest as a joint venturer under 29 U.S.C. § 1002(14)(I) with USDG and with the ESOP Committee Defendants, who are themselves parties in interest under § 1002(14)(B), (C), and (E).

98. Schneid had actual knowledge, and at minimum constructive knowledge, of the circumstances that rendered the ESOP redemption transaction unlawful. Schneid held officer and director positions in numerous RAS entities, participated in the decisions to route business activities away from USDG and to other RAS entities, and therefore knew that USDG's reported financial prospects had been suppressed by the diversion of value rather than by any deterioration in the business. Schneid accordingly knew that the financial projections furnished to GreatBanc did not reflect USDG's value, and that the $4,350,000 redemption price was less than adequate consideration for the Plan's thirty percent interest.

99. Schneid knowingly profited from the violations of 29 U.S.C. § 1106(a)(1)(A) & (D) committed by GreatBanc and ESOP Committee Defendants, the violations of 29 U.S.C. § 1106(b) by the ESOP Committee Defendants, and the violations of 29 U.S.C. § 1104 by GreatBanc and the ESOP Committee Defendants. Schneid wrongfully retained and continues to hold ownership interests in RAS entities that produce income and other financial benefits for Schneid that rightfully belong to the ESOP. These assets are in Schneid's possession and can be traced. Pursuant to principles of equity, as applied in ERISA cases, Schneid must disgorge these assets or their proceeds to the Plan.

**COUNT VI**
**Knowing Participation in Prohibited Transactions and Breaches of Fiduciary Duties Pursuant to 29 U.S.C. § 1132(a)(3)**
**Against the ESOP Committee Defendants**
**(In the Alternative)**

100. Pursuant to 29 U.S.C. § 1132(a)(3), a plan participant may seek "appropriate equitable relief [] to redress [ERISA] violations[.]" Such "appropriate equitable relief" includes recovering proceeds of a fiduciary violation from a knowing participant in the violation. *See Harris Trust v. Salomon Smith Barney*, 530 U.S. 238 (2000).

101. If the ESOP Committee Defendants are not deemed to be ERISA fiduciaries, the ESOP Committee Defendants are alternatively liable for knowingly profiting from all violations of ERISA alleged herein against GreatBanc. The ESOP Committee Defendants knew that they were reaping an improper benefit from their diversion of value away from USDG and the corresponding reduction in the value of the Plan's assets. They secured that improper benefit for themselves by manipulating the redemption valuation and failing to disclose their malfeasance to GreatBanc. They knew that GreatBanc's sale of Plan shares to USDG for less than adequate consideration violated 29 U.S.C. § 1106(a)(1)(A) & (D), and they knew that GreatBanc acted

imprudently in violation of 29 U.S.C. § 1104(a)(1) by failing to monitor the Plan's investment and challenge their scheme. The ESOP Committee Defendants wrongfully retained and continue to hold ownership interests in RAS entities that produce income and other financial benefits for themselves that rightfully belong to the ESOP. These assets are in the ESOP Committee Defendants' possession and can be traced. Pursuant to principles of equity, as applied in ERISA cases, ESOP Committee Defendants must disgorge to the Plan all personal profits earned through their devaluation of the Plan's shares.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A. Certify Plaintiff's authority to seek plan-wide relief on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2);

B. Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative, and her counsel as class counsel;

C. Declare that Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) and are liable for prohibited transactions under 29 U.S.C. § 1106;

D. Restore to the Plan the difference between what the Plan earned and what it would have earned absent the fiduciary breaches and prohibited transactions detailed above;

E. Disgorge to the Plan all profits and undue proceeds of the ESOP Committee Defendants and Schneid received as a result of the violations of ERISA described herein, with use of equitable remedies such as constructive trust, surcharge, or equitable lien as necessary;

F. Rescind the sale transaction and reform the Plan to restore the Plan's assets sold in an illegal transaction;

G. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

H. Award prejudgment and post-judgment interest; and

I. Award such other and further relief as the Court deems just and equitable.

Date: August 6, 2026

**MORGAN & MORGAN P.A.**

*/s/Marc Edelman*
Marc R. Edelman, FL Bar No. 96342
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 577-4722
Facsimile: (813) 257-0572
medelman@forthepeople.com

**ENGSTROM LEE LLC**

Carl F. Engstrom, MN Bar No. 0396298*
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050
cengstrom@engstromlee.com

**Pro Hac Vice* motion forthcoming

**ATTORNEYS FOR PLAINTIFF MARIA TRIVINO**